UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EMMANUEL ASHEMUKE,

                Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

Case No. C23-1592-RSL-MLP

REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Petitioner Emmanuel Ashemuke is currently being detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking to obtain release from detention or a bond hearing. (Pet. (dkt. # 7).) The Government has filed a return memorandum and motion to dismiss (Gov.'s Mot. (dkt. # 18)) and has submitted in support of the return the declarations of the Government's counsel (Second Lambert Decl. (dkt. # 19)), and ICE Deportation Officer Daniel Strzelczyk (Second Strzelczyk Decl. (dkt. # 20)). Petitioner has filed "objections" in response to Respondent's return. (Resp. (dkt. # 22).) The Government elected not to file a reply brief addressing Petitioner's response.

The Court, having considered Petitioner's petition, the parties' briefs, the exhibits submitted in support thereof, and the balance of the record, concludes that the Government's motion to dismiss (dkt. # 18) should be granted, and Petitioner's federal habeas petition (dkt. # 7) should be denied.

## II.   BACKGROUND

Petitioner is a native and citizen of Nigeria who entered the United States on November 25, 2015, at the Dallas, Texas, Port of Entry. (Second Strzelczyk Decl. at ¶ 3.) Petitioner was admitted as a conditional resident, though his conditional resident status was subsequently terminated when Petitioner and his wife failed to appear for a required interview with respect to their Petition to Remove Conditions on Residence. (*See id*. at ¶¶ 3, 5; dkt. # 3 at 17.)

On November 15, 2019, Petitioner was convicted in the United States District Court, Northern District of Texas, following his plea of guilty to a charge of Conspiracy to Commit an Offense Against the United States, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 371 and § 1957. (Second Strzelczyk Decl. at ¶ 4; Second Lambert Decl., Ex. C.) Petitioner was sentenced to a term of 60 months confinement and was ordered to pay $1,653,473 in restitution. (*See id.*)

On September 13, 2021, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with removability under 8 U.S.C. § 1227(a)(1)(A) for trying to procure a benefit by fraud or willfully misrepresenting a material fact. (*See* Second Strzelczyk Decl. at ¶ 6; Second Lambert Decl., Ex. B.) Petitioner was also charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(U) and (D), a law relating to a conspiracy to violate 18 U.S.C § 1957. (*See id*.) Petitioner was confined pursuant to his criminal conviction at the time

REPORT AND RECOMMENDATION
PAGE - 2

the NTA was issued, and his immigration proceedings were administratively closed in December 2021 pending his release from confinement. (Second Strzelczyk Decl. at ¶ 6; Second Lambert Decl., Ex. A at 4.)

On March 14, 2023, Petitioner was released from the custody of the Federal Bureau of Prisons into ICE custody. (Second Strzelczyk Decl. at ¶ 8; Second Lambert Decl., Ex. A at 3.) Petitioner was transported that same day to NWIPC for his removal proceedings to be re-calendared. (*See* Second Strzelczyk Decl. at ¶ 8; Second Lambert Decl., Ex. A at 4.) Petitioner's immigration proceedings are currently ongoing. (Second Strzelczyk Decl. at ¶ 9.)

On May 22, 2023, an immigration judge ("IJ") sustained the charge of removability under § 1227(a)(2)(A)(iii). (Second Strzelczyk Decl. at ¶ 9.) The IJ did not sustain the charge of removability under § 1227(a)(1)(A), and DHS withdrew that charge. (*Id.*) Petitioner advised the IJ that his wife would file a Form I-130, Petition for Alien Relative, and he would adjust status to a lawful permanent resident. (*See id.*) Petitioner's wife filed the Form I-130 petition with U.S. Citizenship and Immigration Services ("USCIS") on June 7, 2023. (*Id.* at ¶ 10.) Petitioner is ineligible to apply for permanent residence unless USCIS approves the Form I-130 petition. (*Id.*) On July 6, 2023, ICE sent Petitioner's administrative file to USCIS with a request to expedite processing of the Form I-130 petition. (*Id.* at ¶ 11.) Petitioner's Form I-130 petition remains pending with USCIS at this time, and the IJ has since granted Petitioner numerous continuances of his removal proceedings while USCIS considers the Form I-130 petition. (*Id.* at ¶ 10.)

In September 2023, Petitioner requested a bond hearing in the immigration court. (*See* Second Strzelczyk Decl. at ¶ 12; Second Lambert Decl., Ex. D.) The bond hearing was held on September 22, 2023, and the IJ determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) due to his criminal conviction. (*See id.*) Petitioner reserved appeal of

the IJ's decision, but ultimately did not appeal that decision to the Board of Immigration Appeals. (*Id.*) Petitioner was most recently scheduled to appear before the IJ in his removal proceedings on February 20, 2024. (*See* Resp. at 11.)

Petitioner submitted his federal habeas petition to the Court for filing on October 16, 2023, but the petition was not filed until December 4, 2023, because of Petitioner's delay in satisfying the filing fee requirement. (*See* dkt. ## 1, 4, 7.) On December 1, 2023, Petitioner submitted to the Court for filing a motion for a temporary restraining order requesting immediate release from custody. (*See* dkt. # 6.) The motion, in which Petitioner essentially sought to expedite the relief he had requested in his petition, was deemed filed on December 4, 2023, the date Petitioner corrected the filing fee deficiency. (Dkt. # 8.) The Government thereafter filed a response to the motion, and on December 12, 2023, the undersigned issued a Report and Recommendation recommending that Petitioner's motion for a temporary restraining order be denied. (Dkt. ## 10, 13.)

The Government filed its return memorandum and motion to dismiss the underlying petition on January 17, 2024, and presented therein arguments similar to those raised in its response to Petitioner's motion for a temporary restraining order. (*See* Gov.'s Mot.; dkt. # 10.) On January 22, 2024, the Honorable Robert S. Lasnik, United States District Judge, adopted this Court's Report and Recommendation addressing Petitioner's motion for a temporary restraining order and denied the motion. (Dkt. # 21.)

### III.  DISCUSSION

Petitioner asserts in this action that his continued detention in ICE custody, which now exceeds 11 months, violates his due process rights under the Fifth Amendment. (Pet. at 1.) Petitioner requests that this Court order his release from custody or, in the alternative, order an

individualized bond hearing. (*Id*. at 2.) The Government argues that Petitioner's detention is lawful pursuant to § 1226(c) and comports with due process. (*See* Gov.'s Mot. at 5-14.)

### A. Statutory Basis for Petitioner's Detention

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Avilez v. Garland*, 69 F.4th 525, 529-530 (9th Cir. 2023). Section 1226(a) grants DHS the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018). Section 1226(c) includes any non-citizen who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B).

Here, Petitioner was found to be removable for having committed an offense covered in § 1227(a)(2)(A)(iii). As such, Petitioner's detention is statutorily mandated by § 1226(c) until his removal proceedings have concluded.[1] Petitioner is therefore not entitled to release or a bond hearing on statutory grounds.

### B. Due Process

Even if authorized under Section 1226(c), Petitioner's continued detention must comport with due process. Petitioner argues that his detention has become prolonged and violates his due

---

[1] In his petition, Petitioner appears to take the position that he is currently detained under § 1226(a), and not § 1226(c). (*See* Pet. at 2-3.) However, in his response to the Government's return and motion to dismiss, Petitioner concedes that he is currently detained under § 1226(c). (*See* Resp. at 3.)

REPORT AND RECOMMENDATION
PAGE - 5

process rights, and that he is entitled to release or a bond hearing on this basis. (*See* Pet. at 1-3.) Respondent counters that Petitioner's continued mandatory detention is reasonable and comports with due process. (*See* Gov.'s Mot. at 7-15.)

In *Demore*, the Supreme Court rejected a due process challenge to § 1226(c) explaining that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable non-citizens convicted of certain crimes and holding that "the Government may constitutionally detain deportable [non-citizens] during the limited period necessary for their removal proceedings." 538 U.S at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in most cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a non-citizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). District courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" [2] *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report*

---

[2] Whether due process requires a bond hearing for noncitizens detained under § 1226(c) remains an open question in the Ninth Circuit. *See Avilez*, 69 F.4th at 538 (declining to rule on whether due process required a bond hearing for a non-citizen detained under § 1226(c) and remanding to the district court for consideration of that claim); *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due

REPORT AND RECOMMENDATION
PAGE - 6

*and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 923-24 (W.D. Was. 2020) (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), judges in this District have adopted a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089, at *6-7. Under the *Martinez* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *9. The Court will now apply these factors to assess whether Petitioner's detention has become unreasonable.

### 1. Length of Detention to Date

The first factor, the length of detention to date, is the most important one. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10. The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify.

---

process requires a bond hearing for [non-citizens] detained under § 1226(c) is not before us today. And we take no position on that question.").

*See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months.").

Here, at the time Petitioner filed his petition, he had been detained for an ongoing period of seven months. (*See* Pet. at 1.) Petitioner's detention has extended to approximately eleven months at this juncture. Because Petitioner's detention has exceeded the "brief" period presumed in *Demore*, this factor weighs in Petitioner's favor.

    2.  *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Any projection as to how long Petitioner's detention is likely to continue would be speculative. Petitioner is currently awaiting a decision from USCIS on a pending Form I-130 petition. Petitioner represents to the Court in his response to the Government's motion to dismiss that he was scheduled for a hearing before the IJ on February 20, 2024, but he anticipated the hearing would be continued even if his Form I-130 petition were to be adjudicated before that date. (Resp. at 11.) That date has now passed and neither party has apprised the Court of any change in the status of Petitioner's removal proceedings.

REPORT AND RECOMMENDATION
PAGE - 8

As the Court noted in its Report and Recommendation addressing Petitioner's motion for preliminary injunctive relief, USCIS's decision on the Form I-130 petition will likely dictate the next steps in the removal process. (*See* dkt. # 13 at 9.) What those steps will be, and how they are likely to impact the length of Petitioner's detention remains unknown at this point in time. Given the ongoing uncertainty, this Court concludes that the second factor is neutral.

        3.    *Criminal History*

Under the third and fourth factors, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y 2018). The relevance of these factors is that they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262. Here, Petitioner's criminal conviction for conspiracy to commit fraud resulted in a 60-month sentence and he was confined for approximately 43 months. (*See* Second Strzelczyk Decl. at ¶ 4; Second Lambert Decl., Ex. C; Gov.'s Mot. at 12 n.1.) Petitioner's length of detention has not exceeded his criminal sentence, nor is it close to doing so at this juncture.

In addition, Petitioner's criminal conviction arose out of a multi-year conspiracy in which Petitioner and his co-conspirators operated a "romance scheme" designed to lure lonely women into romantic relationships from whom they would then request money under materially false pretenses. (*See* Second Lambert Decl., Ex. C.) Petitioner received over $1.5 million in proceeds from his criminal activity and he has been ordered to make restitution to his victims as a part of his sentence. (*See id.*)

Petitioner asserts that during the course of the conspiracy he was merely acting as an "Arbitrageur," buying U.S. currency from individuals residing in the U.S. and abroad and

exchanging that currency for Nigerian currency at a higher rate than the individuals would have gotten directly from Nigerian banks. (Resp. at 12-13.) Petitioner claims he had no direct knowledge of the alleged romance scheme, nor any knowledge of who the victims were. (*Id*. at 13.) He further claims he was first made aware of the alleged scheme by DHS agents in January 2019, and he thereafter ceased all operations of his arbitrage business. (*Id*.) Petitioner maintains that he was "more or less a victim of the scheme." (*Id*.)

Regardless of how Petitioner now chooses to characterize his fraudulent activity, he did in fact plead guilty to his involvement in the conspiracy with which he was charged. (*See* Second Lambert Decl., Ex. C.) Given the length of Petitioner's sentence and the substantial fraud involved in his criminal enterprise, the Court finds the third and fourth factors weigh in favor of the Government.

4. *Conditions of Detention*

Under the fifth factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (citation and internal quotations omitted). Petitioner asserts that there is no difference between conditions at the NWIPC and those at penal institutions. (Resp. at 13.) Petitioner claims he is currently being detained in conditions that are "deplorable" and "inhumane," and worse than conditions he experienced in penal institutions. (*Id*.) In support of this claim, Petitioner references a June 2023 Office of the Inspector General ("OIG") report which he asserts found numerous "violations" in NWIPC operations. (*See id*.)

REPORT AND RECOMMENDATION
PAGE - 10

Petitioner did not provide a copy of the OIG report he relies on, but the Court presumes he is referring to a report issued by the DHS OIG on May 22, 2023, following an unannounced inspection of the NWIPC. *See* Results of an Unannounced Inspection of Northwest ICE Processing Center in Tacoma, Washington, *available at* https://www.oig.dhs.gov/sites/default/files/assets/2023-05/OIG-23-26-May23.pdf (last viewed February 28, 2024). While the report found that the NWIPC was out of compliance with ICE detention standards in certain respects, it also noted that a majority of the issues identified therein had been resolved or were in the process of being resolved as of the date the report was issued. *See id*. Moreover, none of the issues identified in the report support Petitioner's contention that the conditions under which he has been confined are deplorable or inhumane.

In addition to referencing the OIG report, Petitioner also notes that there have been numerous hunger strikes by detainees at the NWIPC protesting the conditions there, and that detainees are restricted to their housing units for 22-hours a day and are allowed only two hours of recreation outside their units. (Resp. at 14.) Unfortunately, the Government has not weighed in on Petitioner's argument concerning the conditions of his confinement. Regardless, Petitioner has not demonstrated that the current conditions of his detention are sufficiently similar to penal confinement for this factor to weigh in his favor.

        5.     *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 965 (citing *Hernandez v. Decker*, 2018

WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")). With respect to the Government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11. Nothing in the record demonstrates that either party has engaged in deliberate delay tactics. The Court therefore finds these factors, on balance, are neutral.

      6.    *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

Once again, as the Court noted in its Report and Recommendation addressing Petitioner's motion for a temporary restraining order, there is simply not enough information available at this juncture to allow the Court to predict whether Petitioner's removal proceedings will result in a final order of removal. (*See* dkt. # 13 at 11-12.) As noted above, Petitioner currently has a Form

I-130 petition pending before USCIS. ICE has requested that USCIS expedite processing of the petition, but the petition remains pending after eight months. Petitioner has advised the IJ of his intent to apply for adjustment of status to a lawful permanent resident, which he may do only if USCIS approves the Form I-130 petition. Whether the Form I-130 petition and/or any subsequent request for adjustment of status is likely to be approved remains speculative at this time. Given the limited information available to the Court at this juncture, the Court finds this factor weighs neutrally.

       7.    *Weighing the Factors*

As discussed above, one of the eight factors weighs in Petitioner's favor, two factors weigh in the Government's favor, and the remaining five factors are neutral. In this Court's view, the factors that weigh in the Government's favor, *i.e.*, those that relate to Petitioner's criminal conviction and sentence outweigh the factor that weighs in Petitioner's favor, *i.e.*, the current length of his detention. On this record, the Court concludes that Petitioner has not established that his detention to date is unreasonably prolonged and therefore violates his due process rights.

### IV.    CONCLUSION

For the foregoing reasons, this Court recommends that the Government's motion to dismiss (dkt. # 18) be granted, and that Petitioner's petition for writ of habeas corpus (dkt. # 7) be denied. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed

within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 22, 2024**.

DATED this 29th day of February, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14