UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EMMANUEL ASHEMUKE,

                Petitioner,

    v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

Case No. C23-1592-RSL

ORDER DENYING MOTIONS TO ENFORCE AND FOR TEMPORARY RESTRAINING ORDER

On August 18, 2024, the Court denied petitioner's request for immediate release from ICE detention but ordered defendant to provide an individualized bond hearing before an immigration judge ("IJ") following the procedures set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). Dkt. # 29. A bond hearing was held six days later, and the IJ denied bond and conditional release, concluding that the government had "established by clear and convincing evidence that [petitioner] is a Danger to the Community and a Flight Risk." Dkt. # 31 at 4-5.[1] This matter is again before the Court on petitioner's

---

[1] Respondent appealed the IJ's order, and the Board of Immigration Appeals ("BIA") affirmed on August 1, 2024. Dkt. # 61-1. The Court has taken judicial notice of the appellate decision. Dkt. # 62. Even if a prudential exhaustion requirement applies when a Court is asked to review respondents' compliance with the terms of a conditional writ, the BIA has now ruled, and the issues are ripe for judicial consideration.

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 1

motion to enforce the Court's August 18th order and motion for temporary restraining order.

Petitioner argues that (a) the bond hearing he was given did not comply with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), as required by the Court; (b) the Court retains jurisdiction to review the IJ's compliance with its order; and (c) the government's failure to cure the constitutional violation arising from his prolonged detention requires petitioner's immediate release from custody.[2] The Court must first address whether it has subject matter jurisdiction: in its absence, federal courts lack the power to hear the cause of action and may not issue a judgment on the merits. *See Snoqualmie Indian Tribe v. Wash.*, 8 F.4th 853, 861 (9th Cir. 2021).

**A. Jurisdiction**

"When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). While release from custody was once considered the only relief available in such circumstances, *see Medley, Petitioner*, 134 U.S. 160, 173 (1890), courts have long utilized conditional releases to give the government an opportunity to correct the unlawful judgment or conditions of

---

[2] In his motion, petitioner also argued that the government's denial of a motion for a new bond hearing after his Form I-130 was approved was legal error. As respondent points out, this issue was not (and could not have been) raised when the Court first considered whether petitioner's continued detention was unreasonable. In order to decide this issue, the Court would have to undertake a second, *de novo* assessment of the same issue in light of the new evidence. Petitioner does not explain how consideration of his new argument would ensure compliance with the earlier order, *see Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011), and has abandoned this argument in reply.

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 2

confinement before release is required, *see Harvest*, 531 F.3d at 741–42. In this case, the Court found that petitioner's continued detention without an individualized bond hearing was unreasonable and violated petitioner's due process rights, but declined to order his immediate release. Instead, the government was given an opportunity to conduct an individualized bond hearing that provided certain procedural safeguards. Dkt. # 29 at 2. In these circumstances, the Court retains jurisdiction under 28 U.S.C. § 2241 to review the bond hearing for constitutional and legal error. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (2011). "Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202. *See also Hechavarria v. Whitaker*, 358 F. Supp.3d 227, 235-36 (W.D.N.Y. 2019) (finding that Section 1226(e)'s limitations do not apply where the Court is determining whether its prior order was followed and whether the petitioner has received the due process to which he is entitled).

**B. Compliance with August 18th Order**

    Respondents were directed to provide petitioner with a bond hearing that complied with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In order to comport with due process, a bond hearing before a neutral IJ must meet the following requirements:

    (1) the burden of establishing that continued detention is justified falls on the government (638 F.3d at 1203);

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 3

(2) the government must prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community in order to justify denial of bond (638 F.3d at 1203-05);

(3) the IJ should consider the factors set forth in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006), when determining whether petitioner must be released on bond (638 F.3d at 1206);[3] and

(4) the government must make a contemporaneous record of the bond hearing (638 F.3d at 1208).

Petitioner challenges respondent's compliance with the first three requirements.

IJ John Odell presided over petitioner's bond hearing on August 24, 2024. That same day, he issued a check-box form of order stating that he had "considered the representations of the Immigration and Customs Enforcement and the respondent" and found that the Department of Homeland Security had "established by clear and convincing evidence that Respondent is a Danger to the Community and a Flight Risk." Dt. # 31 at 4-5. A few days after petitioner filed an appeal with the BIA, IJ Odell issued a written memorandum in which he referenced *Matter of Guerra* and the factors that

---

[3] *Guerra* discusses nine factors relevant to the bond determination, namely: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. 24 I. & N. Dec. at 40.

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 4

should be considered when making a bond determination. The IJ specifically highlighted the following considerations:

- In November 2019, petitioner was convicted of laundering over $1.5 million that his co-conspirators defrauded from vulnerable victims in a so-called "romance scheme." He was sentenced to serve 60 months in federal prison.

- Petitioner argued at the bond hearing that he was simply operating a legitimate arbitrage business and that he was pressured into pleading guilty.

- Petitioner has a U.S. citizen spouse, family members related to him through his spouse, a place to live if he were released on bond, and other connections with the United States.

- Petitioner's spouse, together with petitioner, made false statements on an immigration form submitted on petitioner's behalf.

- Petitioner first entered the United States in November 2015 as a conditional resident, a status that was terminated in March 2020 when he failed to appear for an interview because he was then in federal custody.

- Petitioner intends to pursue relief from removal and adjustment of status through the I-130 petition filed by his spouse.

Dkt. # 51-2 at 5-6. IJ Odell ultimately concluded that, despite petitioner's ties to the United States and his on-going efforts to adjust his status through his spouse, the scope of the criminal conspiracy of which he was a part, the financial harm to the many victims of the conspiracy, and his spouse's conviction for false statements made on petitioner's behalf constitute clear and convincing evidence that petitioner remains a danger to the community and is a flight risk. Dkt. # 51-2 at 6-7. On August 1, 2024, the BIA affirmed the IJ's decision, focusing on the nature of petitioner's criminal activity, his control of

overseas bank accounts, his refusal to take responsibility, and the speculative nature of petitioner's hope for discretionary relief from removal. Dkt. # 61-1.

The Court has listened to the audio recording of the bond hearing. Dkt. # 51-1. IJ Odell acknowledged at the outset that the government has the burden of showing by clear and convincing evidence that petitioner presents a danger to the community and/or a flight risk. He rejected the government's argument that the statutory requirement of mandatory detention governed, but was clearly troubled by the fact that petitioner plead guilty in one judicial proceeding and was now attempting to argue that he did nothing wrong. IJ Odell was also troubled by the fact that petitioner was attempting to portray his wife's conduct as an accident or oversight, a characterization that was inconsistent with her criminal admissions and conviction. The IJ considered the evidence submitted by both parties and questioned petitioner regarding his ties to the United States, his employment history, his education, his immigration history, and his pending immigration applications. Given an open-ended opportunity to address the court, petitioner said that he was sorry for the victims, had terminated his money transfer business, had no history of violence or flight (despite knowing that he was under investigation for money laundering), had been scheduled to continue his education when he was arrested, and just wanted to go back to live with his wife and get a job to pay down the restitutionary amount. When IJ Odell invited the government, as the party bearing the burden of proof, to make an offering or question petitioner, it highlighted the facts that petitioner's

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 6

children are in Nigeria and that petitioner's spouse omitted that information from an immigration form she filed on petitioner's behalf.

As mentioned above, the government, through IJ Odell and the BIA, ultimately concluded that petitioner posed a danger to the community. The government acknowledged that petitioner posed no physical danger to anyone, but was persuaded that petitioner retained the same capabilities to cause significant and widespread financial and emotional harm, implicitly doubting the sincerity of petitioner's apologies and openly doubting some of his representations at the hearing (particularly where they were inconsistent with the written records submitted). The IJ also found that petitioner posed a flight risk because his spouse (who was also his sponsor) lied to obtain an immigration benefit and all of his other contacts in the United States come through her.

Petitioner argues that (1) the finding that petitioner is a flight risk is legal error in that respondent never even argued flight risk, much less provided clear and convincing evidence, (2) the finding that petitioner is a danger to the community is legal error in that it relies entirely on petitioner's single, non-violent conviction and the conviction of another person (his spouse), (3) the IJ ignored or failed to give any weight to the bond factors as required by *Singh*, and (4) IJ Odell failed to consider less restrictive alternatives to detention. The Court has jurisdiction over this matter only to determine whether IJ Odell complied with the August 18th order and provided plaintiff with the process that was due. While the Court retains the power to ensure that the IJ followed the dictates of *Singh*, IJ Odell's decisions are not reviewed *de novo* and will be disturbed

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 7

only if the government's evidence could not, as a matter of law, establish clearly and convincingly that petitioner poses a danger to the community and/or a flight risk. *See Hechavarria*, 358 F. Supp.3d at 235-36. Having reviewed the evidence and the parties' submissions, the Court finds as follows:

(1) The evidence that petitioner is a flight risk is neither clear nor convincing. That petitioner's spouse was willing to lie on an immigration form in an attempt to avoid or forestall removal and that his family connections in the United States are through his spouse do not suggest, much less establish, that he would fail to appear for future immigration proceedings or otherwise abscond. At the time of the hearing, petitioner had a pending I-130 petition and the hope of readjusting his status. He has family and friends in Texas, where he has studied, been employed, and made a life with his spouse over the last decade. He did not run when he knew he was being investigated for money laundering, and he has appeared for every immigration hearing except one (which was held during a time when he was incarcerated). The only factor IJ Odell cited in support of his flight risk finding is that petitioner's "spouse has herself been convicted of making false statements to immigration authorities with [petitioner] and on his behalf." Dkt. # 51-2 at 6. How the fact that his wife was willing to lie in order to keep petitioner in the country makes petitioner a flight risk is unstated and unclear. Because the government's evidence could not, as a matter of law, establish clearly and convincingly that petitioner poses a flight risk, IJ Odell did not apply the correct burden of proof and that part of the decision cannot stand.

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 8

(2) Contrary to petitioner's argument, the IJ's finding that petitioner is a danger to the community relies on more than petitioner's 2019 conviction for a non-violent crime (and/or his wife's conviction for false statements). Rather, there is evidence in the record that petitioner continues to deny the wrongfulness of his conduct, has not accepted responsibility for the harm he caused, and retains the bank accounts and other tools that would enable him to launder ill-gotten proceeds in the future. While petitioner expressed sorrow that innocent, vulnerable people lost tens of thousands of dollars in the "romance scheme" of which he was a part, he affirmatively disavowed admissions he made during the criminal proceeding regarding his knowing participation in the scheme and he showed no insight or concern regarding how he came to enable the scheme, how his skills and systems had been used by others to bring about the harm, and how he could ensure that his supposedly innocent talents could not be misused by nefarious actors in the future. Because the government's evidence could establish clearly and convincingly that petitioner poses a danger to the community, there is no error of law in the way IJ Odell and the BIA applied the burden of proof regarding that part of the decision.

(3) The Ninth Circuit has identified factors to which IJs "should look" when determining whether a petitioner is a flight risk or danger to the community. *Singh*, 638 F.3d at 1206 (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-66 (9th Cir. 2008)). Consideration of each individual factor is not necessary: the factors are introduced with permissive language and "may include any or all of the following." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. at 40). The factors are identified in *Singh* to support the

conclusion that a petitioner's criminal record, standing alone, should not be used to support a present finding of dangerousness in perpetuity. IJ Odell made no such error here. Even if an IJ were required to separately discuss and analyze each of the factors listed in *Singh* (they are not), IJ Odell elicited testimony and evidence regarding petitioner's address, his manner of entry into and length of residence in the United States, petitioner's family ties in the United States and whether they offered any hopes of achieving permanent resident status, petitioner's education, employment history, record of appearance in court, criminal record, and immigration record, and whether petitioner had previously absconded. The IJ was not required to make explicit findings regarding each of these factors when resolving the ultimate issue of whether petitioner poses a danger to the community or a flight risk.

(4) *Singh*, which sets forth the procedures required by the August 18th order, does not require the decisionmaker to consider less restrictive alternative to detention in these circumstances. Petitioner attempts to incorporate this requirement from cases decided in the Second Circuit, *see Hechavarria*, 358 F. Supp.3d at 231, but even there, the availability of less restrictive alternatives is not an issue once the IJ has determined that petitioner is a danger to the community, *see Black v. Decker*, 103 F.4th 133, 158-59 (2nd Cir. 2024). Because "a showing of dangerousness by clear and convincing evidence would foreclose any possibility of bond . . . [t]he IJ would then have no reason to consider financial circumstances or alternatives to detention." *Black*, 103 F.4th at 159.

The IJ's failure to consider alternatives other than detention to protect the community is not inconsistent with the August 18th order.

For all of the foregoing reasons, petitioner's motion to enforce (Dkt. # 38) and motion for temporary restraining order (Dkt. # 45) are DENIED.

Dated this 7th day of October, 2024.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTIONS TO ENFORCE
AND FOR TEMPORARY RESTRAINING ORDER - 11